UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JUN 21  PM 1:28

CLERK

BY _____
        DEPUTY CLERK

REGINALD CYR,                                    )
                                                 )
          Plaintiff,                             )
                                                 )
     v.                                          )   Case No. 5:10-cv-194
                                                 )
UNITED STATES OF AMERICA, LONDONDERRY )
VENTURES, NEPO: LONDONDERRY, LLC, and )
STEVE GORDON d/b/a STEVE'S SERVICE,              )
                                                 )
          Defendants.                            )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT UNITED STATES' MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION, AND DENYING UNITED STATES'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
(Doc. 63)

Plaintiff Reginald Cyr brings this negligence action against Defendants United

States (the "Government"), Londonderry Ventures ("LV"), NEPO: Londonderry, LLC

("NEPO"), and Steve Gordon d/b/a Steve's Service. Plaintiff alleges that Defendants'

negligence caused him to slip and fall on a patch of ice and snow in the parking lot

outside the Post Office in Londonderry, Vermont. Presently before the court are the

Government's motions to dismiss the Amended Complaint for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted. After a period

of jurisdictional discovery, the parties completed briefing on April 11, 2011. Plaintiff is

represented by Richard K. Bowen, Esq., and the Government is represented by AUSA

Nikolas P. Kerest.

For the reasons set forth below, the Government's motion to dismiss for lack of

subject matter jurisdiction is GRANTED in part and DENIED in part, and the

Government's motion to dismiss for failure to state a claim is DENIED.

## I.   __Factual Background__.

On February 12, 2008, Plaintiff slipped and fell in one of the parking spaces adjacent to the Post Office building in Londonderry, Vermont.  Both the Post Office building and the parking lot where Plaintiff fell (the "parking lot") are part of the Mountain Marketplace shopping center, which includes other businesses.

LV owns the land upon which the Mountain Marketplace is located, including its parking lot.  On August 31, 1999, LV, as lessor, entered into a lease with NEPO, as lessee (the "Ground Lease"), which includes the land on which the Post Office building sits, but which specifically excludes the ten parking spaces adjacent to the Post Office building where Plaintiff slipped and fell.  The Ground Lease provides that NEPO, its subtenants, and their business invitees "shall have the right to travel over the adjacent lands of [LV] for the purpose of gaining access to the leased premises, and . . . shall have the right to park in not less than ten (10) parking spaces immediately adjacent to the leased premises."  (Doc. 63-2.)  LV retained certain maintenance obligations under the Ground Lease, including the obligation to provide "snowplowing . . . in such amounts and at such intervals as [NEPO] shall reasonably require," and to provide "[s]nowplowing . . . for the parking and driveway areas adjacent to the leased premises," *id*. at 14, which includes the area where Plaintiff fell.

NEPO subleased the premises it holds under the Ground Lease to the United States Postal Service ("USPS") in a sublease dated February 26, 1999 (the "Sublease"). A diagram attached to the Sublease notes "10 Dedicated Customer Parking Spaces" (Doc. 63-2 at 39) adjacent to the Post Office building where Plaintiff slipped and fell.  The parties dispute whether this diagram should be interpreted to include those ten parking spaces as part of the leasehold conveyed by the Sublease, notwithstanding their exclusion from the Ground Lease between LV and NEPO.  *See* Docs. 63, 64 at 2-4.  Even if the ten parking spaces are not included in USPS's leasehold, the Ground Lease afforded USPS and its customers the right to park in those spaces, and to travel over the parking lot in order to access the Post Office.

Although LV was obligated under the Ground Lease to provide snow removal services for both the property subject to the Ground Lease, as well as the adjacent parking lot and driveway areas, USPS entered into a letter agreement with LV dated February 17, 2000 in which LV agreed to maintain the sidewalks and parking lot outside the Post Office building for a $100.00 monthly fee. (Doc. 63-1 at 6.)  Specifically, during winter, LV agreed to "[p]low/sand parking lot as needed"; "[s]hovel, sand, salt remove ice as needed"; and to check walkways "daily and sand[]/salt[] daily if necessary." *Id.*  The Government now disputes that this agreement applied to the parking lot in which Plaintiff fell, but does not identify what other "parking lot" it refers to.  Additionally, in an interrogatory response, the Government averred that "[USPS] contracted with [LV] to perform year round maintenance of the parking lot in front of the Post Office building including plowing and salting of the parking lot as needed in the winter." (Doc. 66-1 at 4.)

LV subsequently subcontracted its obligations under the maintenance agreement with USPS to Steve Gordon.  Mr. Gordon agreed to provide winter maintenance for the entire Mountain Marketplace parking lot, including the parking spaces adjacent to the Post Office building. *See* Doc. 63-4 at 2.

On October 19, 2010, Plaintiff filed an Amended Complaint in which he alleges that:

> The defendants, and/or their agents, servants, or employees, were jointly and severally negligent in the ownership, operation, and maintenance of the said premises in that they failed to maintain the area in front of the Post Office building and the adjacent walking area and parking lot in a proper and safe manner; they permitted an icy condition to exist which caused a hazard and a peril to persons traversing the area seeking to enter/exit the Post Office, and in particular failed to warn or apprise pedestrians in general, and in particular, of the dangers then and there existing; failed to take any proper remedial action to alleviate the condition when they knew, or should have known, that persons would traverse the said area in order to conduct business in the said Post Office.

(Doc. 9 ¶ 16.)

The Government moved to dismiss all claims against it for lack of subject matter jurisdiction on October 29, 2010. Before ruling on the motion, the court ordered the parties to engage in jurisdictional discovery. Upon completion of discovery, the Government withdrew its original motion (Doc. 14) and filed new motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 63). The Government's motions are now ripe for decision. Plaintiff opposes the motions.

II.      **Standard of Review.**

      A.      **Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted). Once the parties have been afforded the opportunity to engage in jurisdictional discovery, and "where evidence relevant to the jurisdictional question is before the court, 'the district court . . . may refer to [that] evidence.'" *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Ensign-Bickford Co. v. ICI Explosives USA Inc.*, 817 F. Supp. 1018, 1023 n.7 (D. Conn. 1993). Moreover, the consideration of evidence outside the pleadings does not transform a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56. *See Makarova*, 201 F.3d at 113; Fed. R. Civ. P. 56.

Plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova*, 201 F.3d at 113. To bring suit against the United States, the plaintiff must establish some basis for finding a waiver of sovereign immunity. *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In

the absence of a waiver of sovereign immunity, the court lacks subject matter jurisdiction to adjudicate claims brought against the United States. *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996); *see also United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

## B.     Motion to Dismiss for Failure to State a Claim.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. However, this assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   Conclusions of Law and Analysis.

### A.     The Government's Rule 12(b)(1) Motion to Dismiss.

Plaintiff asserts that the Federal Tort Claims Act ("FTCA") waives the Government's sovereign immunity for his claims. *See* 28 U.S.C. §§ 1346, 2671. Under the FTCA, district courts have jurisdiction over claims against the United States that allege personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,

under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  In its motion, the Government makes two arguments why the FTCA does not provide a waiver of immunity in this case: (1) Plaintiff has failed to establish that the Government owed him a duty of care, and therefore the Government cannot be liable to him for negligence under Vermont law; and (2) even if the Government owed Plaintiff a duty of care, the Government is immune under statutory exceptions to the FTCA that preserve sovereign immunity for claims based upon the conduct of government contractors, and conduct that is a discretionary government function.

### i.     Plaintiff Has Sufficiently Established Duty.

The Government argues that this court lacks jurisdiction over Plaintiff's claims because Plaintiff has not established that the Government owed him a duty of care.  The Government contends that there is no waiver of immunity under such circumstances because the FTCA waiver "only extends to torts committed by government employees 'under circumstances where the United States, if *a private person*, would be liable to the claimant[.]'" *Guttridge v. United States*, 927 F.2d 730, 731-32 (2d Cir. 1991) (quoting 28 U.S.C. § 1346(b)); *see also Whittington v. United States*, 2004 WL 1088283, at *1-3 (6th Cir. May 5, 2004) (affirming dismissal for lack of subject matter jurisdiction because plaintiff did not establish that government owed it a duty of care).

The existence of a legal duty is the first element of common law negligence under Vermont law, *see Langle v. Kurkul*, 146 Vt. 513, 518, 510 A.2d 1301, 1304 (1986), and a negligence claim must fail absent a legal duty running from the defendant to the plaintiff, *see Rubin v. Town of Poultney*, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998).  The Government offers two arguments as to why it owed no duty to Plaintiff in this case.  First, it argues that the parking lot in which Plaintiff fell is outside the premises that USPS subleased from NEPO, and therefore USPS does not own, lease, occupy, or control the parking lot.  Second, it argues that snow and ice during the winter months in Vermont present an "open and obvious" danger from which USPS had no duty to protect Plaintiff.

In response, Plaintiff disputes that the parking lot is outside USPS's leasehold, and argues that, in any case, USPS assumed control over the parking lot when it engaged LV to maintain the parking area and walkways adjacent to the Post Office building. Plaintiff further argues that it would be premature to decide whether the slippery parking lot was "open and obvious."

In Vermont, whether a legal duty exists is primarily a question of law, *see Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993), that is "ultimately a question of fairness." *Langle*, 146 Vt. at 520, 510 A.2d at 1305 (internal quotation marks omitted). A court must consider the relationship between the parties, the nature of the risk (including its foreseeability), and the public policy implications of imposing a duty on the defendant to protect against the risk. *Id.*

Pursuant to these principles, Vermont has recognized that the "owner or occupier of land owes a business invitee the duty to maintain the premises in a safe condition, suitable for use by the invitee." *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 241, 552 A.2d 1201, 1202 (1988) (internal citation omitted). "This duty requires the business owner or operator to use reasonable care to keep its premises in a safe and suitable condition so that [the invitee will] not be unnecessarily or unreasonably exposed to danger." *Id.* (internal quotation marks omitted); *see also Smith v. Monmaney & Speno*, 127 Vt. 585, 588, 255 A.2d 674, 676 (1969) (holding that duty extends to danger incident to accumulations of ice and snow), *overruled on other grounds by Favreau v. Miller*, 156 Vt. 222, 227, 591 A.2d 68, 72 (1991). In addition, the business owner has a duty to warn invitees of known dangerous conditions. *See Farnham v. Inland Sea Resort Props., Inc.*, 2003 VT 23, ¶ 10, 175 Vt. 500, 824 A.2d 554 (citing *Peters v. State*, 161 Vt. 582, 583, 636 A.2d 340, 341 (1993)). The duty to ensure reasonably safe premises arises out of the defendant's "occupancy, ownership, [or] control . . . of such premises[.]" *Ortiz v. Rock Cut Deli*, 2003 WL 68034, at *2 (S.D.N.Y. Jan. 7, 2003) (internal quotation marks omitted); *see also Beaulac v. Robie*, 92 Vt. 27, 102 A. 88, 91 (1917) (holding that duty to ensure reasonably safe premises arises out of "control" or "possession" of the premises).

Contrary to the Government's contention, whether the Sublease includes the parking lot is not dispositive of whether USPS had sufficient control over the parking lot to give rise to a legal duty of care. Although the Vermont Supreme Court has not directly addressed the issue, courts generally recognize that a lessee's duty of care may arise from exercising control over an area which its lessor has agreed to maintain. For example, in *Farrar v. Teicholz*, 570 N.Y.S.2d 329 (N.Y. App. Div. 1991), the plaintiff tripped and fell in the parking lot of the Shrub Oak Shopping Center, approximately twenty feet from the entrance to A&P Supermarket. Plaintiff sued A&P for failing to maintain the parking lot, even though A&P was a lessee whose leasehold did not include the parking area where the plaintiff fell. A&P moved for summary judgment, arguing that it did not owe the plaintiff a duty to ensure that the parking lot was reasonably safe. The court explained that the "determinative factor is one of possession or control," and denied A&P's motion for summary judgment because A&P's manager routinely inspected the parking lot and called "A&P maintenance" with any complaints, and A&P maintenance would either notify its landlord of the problem or assign a contractor to perform the necessary work. *Id.* at 331-32. As a Florida appellate court explained:

> [T]he common law duties owed to invitees by landowners and those lawfully possessing property remain intact. The law is clear that more than one party may have a duty to persons entering the premises. In addition, the fact that one person is under a duty and one fails to perform is no defense to one who has assumed control. . . . Thus, it is not ownership of the property which determines the duty of care, but rather the failure of a person who is in actual possession and control (be it the owner, an agent, a lessee, a construction contractor, or other possessor with authority or control), to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions.

*Worth v. Eugene Gentile Builders*, 697 So. 2d 945, 947 (Fla. Dist. Ct. App. 1997) (internal citations omitted); *see also Krieger v. The Wilson Corp.*, 131 P.3d 661, 672-73 (N.M. Ct. App. 2005) ("We agree . . . that it is not sufficient to simply say that the leased premises was the restaurant only, therefore Lessee had no control over the parking lot, and therefore Lessee has no liability for Krieger's injury. Control is a factual issue . . .

8

[and] [s]ignificant to the inquiry of control would be to know how long the defect had been there, whether there was any agreement . . . regarding the parking lot, or the actions of the parties in relation to the care and use of the parking lot."); *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993) ("A tenant's duty also extends to areas of the premises not within the leasehold but as to which the tenant . . . exercises actual possession or control.  And in the latter instance, that duty of care to invitees devolves upon the tenant even though the lessor has contracted to maintain and repair those parts of the premises."); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993) ("A lessee is responsible for those areas adjacent to the demised premises which it actually controls."); 62 AM. JUR. 2D *Premises Liability* § 12 (2011) ("a lessee who assumes actual control over a portion of adjacent property also assumes legal responsibility for that adjacent portion, even though none of the adjacent property is included in the lease").

Here, USPS and its invitees had the right to park in and travel over the parking lot. USPS then "entered into a letter agreement with [LV] for maintenance of the parking lot and sidewalks outside the Post Office building." (Doc. 63-1 ¶ 10.)  Accordingly, by the Government's own admission, LV was a "contractor hired to perform services for [USPS]," services which included "shoveling, sanding, salting, and removing ice" in the "parking lot outside of the Post Office building."  *Id.* ¶ 11.  In addition, USPS monitored the condition of the parking lot, generally supervised and evaluated LV's performance of the maintenance contract, and contacted LV when the terms of the maintenance contract were not being met.  *Id.* ¶¶ 13-14.  In fact, Postmaster Daley contacted LV to remind it to "address the condition of the parking lot" on the same day that Plaintiff fell. (Doc. 66-1, Response Nos. 4 & 5)  The Government now argues that it "is illogical to assert that [USPS] contracted with a third party to maintain an area not covered by its Sublease and an area for which [LV] already had an explicit, independent obligation to maintain." (Doc. 66 at 3.)  Illogical or not, the record developed through jurisdictional discovery (including affidavits and interrogatory responses submitted by the Government) supports that conclusion.

Guided by this case law from other jurisdictions, as well as the relevant factors (including public policy considerations) for determining duty under Vermont law, the court concludes that USPS assumed sufficient control over maintenance of the parking lot to preclude dismissing the Amended Complaint on the grounds that the Government did not owe Plaintiff a duty of care.[1]

The Government's next argument, that it owed no duty in this case because Plaintiff alleges a dangerous condition that was "open and obvious," fails as a matter of law. The Government relies on the Vermont Supreme Court's pronouncement that the "business invitee ha[s] a right to assume that the premises, *aside from obvious dangers*, [are] reasonably safe for the purpose for which he [is] upon them, and that proper precaution [has] been taken to make them so." *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 334-35, 670 A.2d 795, 799 (1995) (emphasis supplied). But "in Vermont, the obviousness of a danger is an issue bearing on the *plaintiff's* negligence, not the defendant's lack of duty." *Wisdom v. TJX Cos., Inc.*, 410 F. Supp. 2d 336, 344-45 (D. Vt. 2006); *see also Hoar v. Sherburne Corp.*, 327 F. Supp. 570, 578 (D. Vt. 1971) ("The risk of unsafe premises is not assumed by business [invitees], although licensees (and trespassers) assume the risk of obvious dangers."). Accordingly, a determination that the icy area on which Plaintiff fell was "obvious" would be relevant to whether Plaintiff was

---

[1] Even if USPS did not "control" the parking lot in which Plaintiff fell, and therefore did not have a duty to maintain and repair the parking lot, USPS may still owe a duty to warn its invitees about the presence of dangerous conditions of which it had knowledge. *See* Restatement (Second) of Torts § 360, comment a. (1965) ("The lessee may . . . know that the common entrance to the apartment or office which he has leased has become dangerous for use because of the lessor's failure to maintain it in safe condition. His knowledge may subject him to liability . . . if he fails to warn . . . of the danger."); *Kendzierski v. Delaware Federal Credit Union*, 2009 WL 342895, at *5 (Del. Super. Ct. Feb. 4, 2009) ("while a lessor's retention of control over portions of a leased premise relieves the lessee of its obligation to maintain those portions in a reasonably safe condition, it does not imply that the lessee also avoids the duty to warn of such dangers when the lessor fails in its duty"); *Hopkins v. F. W. Woolworth Co.*, 419 N.E.2d 302, 304 (Mass. App. Ct. 1981) ("Even if a finding were warranted that Woolworth had no control over the sidewalk on which the plaintiff fell, it would not be relieved from its duty to warn its invitees of danger."). Plaintiff has brought a failure to warn claim against the Government, and the record shows that Postmaster Daley was aware of ice in the parking lot on the day Plaintiff fell. Thus, USPS's duty to warn independently establishes this court's subject matter jurisdiction under the FTCA.

contributorily negligent, but not to whether the Government owed Plaintiff a duty of care in the first instance. *See Lattrell v. Swain*, 127 Vt. 33, 40, 239 A.2d 195, 200 (1968) ("Where a defect or danger is patent or obvious it is contributory negligence to fail to exercise ordinary care to avoid it."); *Wall v. A. N. Deringer, Inc.*, 119 Vt. 36, 38, 117 A.2d 390, 391 (1955) (holding plaintiff contributorily negligent for failing to notice, and consequently falling over, a six-inch step in defendant's place of business).

Moreover, there is no rule in Vermont that ice and snow during the winter months are *per se* "open and obvious," and whether Plaintiff was negligent in failing to observe the dangerous condition presents a factual issue for jury resolution. *See Wisdom*, 410 F. Supp. 2d at 344; *Wakefield v. Tygate Motel Corp.*, 161 Vt. 395, 398, 640 A.2d 981, 982 (1994) (explaining that one responsible for the premises has a duty to use reasonable care to keep the premises "safe from accumulation of ice and snow"); *Monmaney*, 127 Vt. at 589, 255 A.2d at 674 ("The presence of [ice and snow] upon the common [walkway] . . . is sufficient to compose a question for the jury on liability for injuries arising from the danger . . . .").

In sum, the Government's assertion that it did not owe Plaintiff a duty of care is not a ground on which Plaintiff's Amended Complaint can be dismissed. The record amassed during jurisdictional discovery supports a conclusion that USPS had a duty of care because it asserted some measure of control over the parking lot in which Plaintiff fell, and had knowledge that ice and snow were present in the parking lot on the day in question which arguably gave rise to a duty to warn. In such circumstances, the FTCA waives sovereign immunity to the extent a private person could be liable on the same basis. *See* 28 U.S.C. § 1346(b). Whether the snow and ice on which Plaintiff fell were "open and obvious" cannot be decided as a matter of law and must await further factual development.

### ii.    The Government is Immune from Claims Based Upon LV's Negligent Conduct.

The Government next argues that it is immune from Plaintiff's claims because the

Government contracted LV to maintain the parking lot, and the FTCA does not waive immunity for claims based upon the negligence of government contractors. In other words, because the Government contracted away whatever duty it had to maintain the parking lot, Plaintiff's claims are not premised upon the wrongful act or omission of any Government employee, and therefore the FTCA provides no waiver of sovereign immunity. Plaintiff responds that USPS employees retained the duty to warn even if USPS contracted away its duty to maintain or repair the parking lot, and therefore the FTCA waives immunity for Plaintiff's failure to warn claim.

The FTCA permits actions against the United States for "personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA defines "employees of the Government" to include "officers or employees of any federal agency[.]" 28 U.S.C. § 2671. The term "federal agency" includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States . . . *but does not include any contractor with the United States.*" *Id.* (emphasis supplied). "Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997).

The issue of whether an individual or entity is a government employee is a question of federal law. *See United States v. Orleans*, 425 U.S. 807, 813-14 (1976). "A critical element in distinguishing an [employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Id.* at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). When the Government lacks that power, or does not supervise the "day-to-day operations" of an entity it has hired, such factors weigh against finding an employment relationship. *Id.* at 815. Other factors that favor "contractor" status include the ability of an entity to discipline its own employees or subcontractor, *see Cruz v. United States*, 70 F. Supp. 2d 1290, 1294 (S.D. Fla. 1998), and an entity's obligation to provide its own equipment, employees, or subcontractor to perform the work, *see Berghoff v. United States*, 737 F.

Supp. 199, 202 (S.D.N.Y. 1989).  Finally, courts recognize that the "government's retention of a right to inspect the progress of [an entity's work], does not convert a contractor into a federal employee." *Roditis*, 122 F.3d at 111.

In this case, Plaintiff does not dispute that LV was an independent contractor at the time of Plaintiff's fall.  In its maintenance agreement with USPS, LV agreed to "[p]low/sand parking lot as needed," and "[s]hovel, sand, salt, remove ice as needed." (Doc. 63-1 at 6.)  In performing these obligations, LV hired its own subcontractor, Mr. Gordon, who provided the equipment, employees, and insurance necessary to complete the work.  Postmaster Daley monitored LV's compliance with the agreement, but "never provided detailed day-to-day supervision of the performance of [LV's] employees" or subcontractor.  (Doc. 63-1 ¶¶ 13-14, 16-17.)  Courts, including this one, have recognized that similar maintenance agreements establish contractor relationships under the FTCA. *See Dingler v. United States*, 2008 WL 4065642, at *1-4 (D. Vt. Aug. 26, 2008) (finding that entity who contracted with United States to "inspect, maintain, repair, test and clean" the elevators was a contractor for purposes of the FTCA); *Norman v. United States*, 111 F.3d 356, 357-58 (3d Cir. 1997) (rejecting claim of a slip and fall in a federal building because United States had hired a contractor who was "given broad responsibilities for maintenance," and who had its own employees whom the government did not directly supervise).

Because LV was an independent contractor obligated to perform winter maintenance on the Post Office parking lot, the FTCA does not waive sovereign immunity for Plaintiff's negligent maintenance claims against the Government.  As a result, this court lacks subject matter jurisdiction over such claims, and they must be dismissed.

However, as Plaintiff correctly points out, and as the Government concedes, LV was not obligated to warn of any dangerous conditions present in the Post Office parking lot. *See* Doc. 66 at 3-4.  Thus, Plaintiff's failure to warn claim alleges wrongful conduct or omissions on the part of government employees, and the government contractor exception to the FTCA's waiver of sovereign immunity does not apply.

### iii.  The Government's Failure to Warn was not a "Discretionary Function" Under the FTCA.

The Government contends that it is nonetheless immune from Plaintiff's failure to warn claim because its decision to hire a contractor was discretionary in nature and subsumed any duty to warn USPS customers about the alleged slippery conditions in the parking lot.  In addition, the Government argues that the decision whether to warn is itself discretionary.  Plaintiff disagrees, and argues that USPS has failed to identify a "discretionary function" in the context of its failure to warn.

The "discretionary function exception" to the FTCA provides that the United States is not liable for a "claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  This exception to the FTCA's waiver immunity "prevent[s] judicial 'second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  By immunizing such decisions, the discretionary function exception "protect[s] the Government from liability that would seriously handicap efficient government operations." *Id.*  The Government bears the burden of proving that the discretionary function exception applies. *See Cestonaro v. United States*, 211 F.3d 749, 756 n.5 (3d Cir. 2000); *see also* 14 Wright & Miller, *Federal Practice and Procedure* § 3658 (3d ed. 1998) ("[M]ost courts have concluded that the burden of proving the applicability of the discretionary-function exception falls upon the United States.")

In *United States v. Gaubert*, 499 U.S. 315, 322 (1991) and *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) the Supreme Court set forth two requirements for an action to be a "discretionary function" under the FTCA.  First, "the act must involve an element of judgment or choice.  An act does not involve an element of judgment or choice if it is mandatory; if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . the employee has no rightful option but

14

to adhere to the directive.'" *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 195 (2d Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 536) (other internal quotation marks omitted). Second, "the judgment . . . in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 322-23). "Not every act that involves 'discretion' is protected." *In re World Trade Center*, 521 F.3d at 195.

The Government argues that the exercise of discretion lies in its decision to hire a contractor who had special expertise in ameliorating the conditions that allegedly gave rise to Plaintiff's slip and fall. It contends that because it exercised discretion in selecting the contractor, and required that entity to maintain the area in question, the discretionary function exception to a waiver of sovereign immunity protects it from failure to warn claims. The problem with this argument is twofold.

First, the Government points to no evidence that LV agreed to assume responsibility for making safety judgments. At best, the letter agreement between LV and USPS merely requires LV to plow, salt, shovel, sand, and remove ice "as needed" and "if necessary" without identifying which party will make this determination, or any consequences for the failure to do so. (Doc. 63-1.) Mr. Gordon, in turn, understood that his obligation was to "[s]and and salt when needed or asked for by store or parking lot owner." (Doc. 63-4, Answer No. 6). This is a far cry from a "comprehensive instrument providing that [the contractor] was responsible for maintenance of the [p]remises . . . including ensuring that the floors were free of debris and slip-resistant[,] for having an engineer on call twenty-four hours per day lest things go awry at the [p]remises[,] . . . [and] for the daily operations of the [p]remises." *Williams v. United States*, 50 F.3d 299, 307 (4th Cir. 1995); *see also Fraser v. United States*, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007) (contract "mandated" that contractor "not only maintain the physical property on which it was working, but also "provide and maintain work environments and procedures which will . . . safeguard the public and Government personnel, property, materials, supplies and equipment exposed to Contractor operations and activities," "[t]ake all reasonable steps and precautions to prevent accidents and preserve the life and health of

contractor and Government personnel performing or in any [] way coming in contact with the performance of this contract[,]" and assume all responsibility for any damages as a result of its fault or negligence).

Second, as previously noted, the USPS exercised at least some control over the parking lot, and contacted LV on the day in question "to take care of the parking lot as required by the letter agreement between the [USPS] and [LV]." (Doc. 66-1, Response No. 5.)  Although the retention of some supervisory authority will not automatically defeat a discretionary function exception, it must be coupled with delegation of the day-to-day task of detecting and repairing unsafe conditions in order for the exception to apply. Here, it cannot be said that USPS delegated to LV the task of ensuring the safety of the parking lot, including the duty to warn. *See Duff v. United States*, 999 F.2d 1280, 1281-82 (8th Cir. 1993) (finding that the government delegated to the contractor the obligation to "take all reasonable steps and precautions to prevent accidents" and holding that "[t]he exercise of discretion here occurred when the government decided to delegate to its contractor responsibility for making safety judgments . . . Because the government's decision to delegate responsibility for safety is covered by the [discretionary function] exception, we will find jurisdiction only if the government has also retained and exercised control over the project's safety.").

The Government next argues that the decision to warn is itself discretionary as it involves judgment, choice, and policy considerations and thus is immunized from judicial second-guessing.  Plaintiff counters that, in this case, the failure to warn violated a mandatory policy of the USPS Supervisor's Safety Handbook (the "Handbook") which states that supervisors "*must* establish snow and ice removal plans where necessary," and "[p]rovide for reinspection and cleaning as often as necessary to handle drifting snow and refreezing." (Doc. 63-6 at 82) (emphasis supplied).  The Handbook does not, however, require the posting of warnings and allows the establishment of snow and ice removal plans "where necessary," and reinspection and cleaning "as often as necessary." *Id.* Because these directives require an element of judgment or choice for their implementation, the discretionary function exception's first requirement is satisfied. *See*

16

*Summers v. United States*, 905 F.2d 1212, 1225 (9th Cir. 1990) (finding failure to post warning sign was discretionary because the decision did not contravene a prescriptive federal statute, regulation, or policy).

As to the second requirement, the court must consider whether the failure to warn of icy conditions was "grounded in considerations of public policy" or "susceptible to policy analysis." The inquiry into the policy implications of a particular discretionary decision or act focuses "not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken," and the decisions made. *Gaubert*, 499 U.S. at 322. The nature of the decision in this case—whether to post a warning sign about ice in the parking lot—requires only judgment about the severity of snow and ice conditions on a particular day, not an assessment of competing economic, social, or political policy considerations. *See Summers*, 905 F.2d at 1215 ("where the challenged governmental activity involves safety considerations, the rationale for the [discretionary function] exception falls away and the U.S. will be responsible for the negligence of its employees") (quoting *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987)).

The Government apparently contends that liability for the United States on a failure to warn theory is *always* barred by the discretionary function exception. *See* Doc. 63 at 17. But "a failure to warn falls within the discretionary function exception only if it implicates political or economic policy considerations," *Lesoeur v. United States*, 21 F.3d 965, 970 (9th Cir. 1994), and FTCA cases concerning the Government's duty to warn are divided accordingly. *Compare Reichart v. United States*, 695 F. Supp. 2d 8, 15 (W.D.N.Y. 2010) (finding that Government's failure to warn of an unsafe pier used for public recreation purposes was a discretionary function immunized from liability where Army Corps chose from three alternatives in deciding not to post warnings), *with Boyd v. United States*, 881 F.2d 895, 898 (10th Cir. 1989) (finding that Government's failure to warn swimmers of dangerous conditions in popular swimming area "does not implicate any social, economic, or political policy judgments with which the discretionary function exception is properly concerned.").

Courts that have held that a failure to warn fits within the discretionary function exception have found, as *Gaubert* requires, that the Government's decision not to warn served identifiable economic, social, or political policy interests. For example, in *Kiehn v. United States*, 984 F.2d 1100 (10th Cir. 1993), the plaintiff was injured after he fell from a cliff in Little Rainbow Park, a remote area of Dinosaur National Monument. *Id.* at 1101. The plaintiff brought suit against the United States, challenging the National Park Service's ("NPS") decision to not post warning signs at the location of his fall. The Tenth Circuit held that this decision was grounded in policy considerations because it furthered "the fundamental purpose of . . . monuments . . . [which] is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of future generations." *Id.* at 1104 (quoting 16 U.S.C. § 1 (1988)). The court also noted an NPS Management Policy "of carefully using signs so as to minimize their intrusion upon the area's natural and historical setting." *Id.*

Similarly, in *Lesoeur*, *supra*, the plaintiff alleged that NPS should have warned her about the dangers of white water rafting tours with the Hualapai Indian Tribe in Grand Canyon National Park. The plaintiff's failure to warn claim was barred by the discretionary function exception because, in declining to provide warnings, NPS furthered important political interests. The court explained that "[i]t is not difficult to see how relations between the Tribe and the United States could have been . . . adversely affected by the NPS' warning Park visitors of using the Tribe's tours[.]" *Lesoeur*, 21 F.3d at 970. While safety warnings that could affect tribal relations cannot be challenged in a tort claim against the United States, the court cautioned that "[i]n the usual case, the failure to warn involves only 'safety considerations under an established policy, rather than the balancing of competing policy considerations.'" *Id.* (quoting *Summers*, 905 F.2d at 1215). In such cases, "the discretionary function exception does not apply." *Id.*

As the Ninth Circuit acknowledged in *Lesoeur*, the Government's failure to warn is not immunized in the absence of identifiable social, economic, or political policy interests competing with basic safety concerns. The Second Circuit recognized this principle in *Andrulonis v. United States*, 952 F.2d 652 (2d Cir. 1991). There, a scientist

18

from the Center for Disease Control ("CDC") failed to warn his colleague about the dangers of conducting experiments with a viral strain of the rabies disease. *Id.* at 653. The Government attempted to invoke the discretionary function exception, arguing that the scientist's decision to permit experimentation without a warning furthered the general CDC policy of eradicating rabies. In finding no discretionary function, the court explained that no policy interest could be served by the failure to warn: "Nothing indicates that CDC policy required, or even encouraged, [the scientist] to ignore unsafe laboratory conditions and thereby unnecessarily place the lives of laboratory workers at risk in order to further a scientific cause or any other objective of the government." *Id.* at 655. The court added that "it is hardly conceivable that the CDC would ever have a policy to keep silent about obvious, easily-correctable dangers in experiments using drugs supplied by the CDC." *Id.*

In this case, the Government has not identified any social, economic, or political policy interests that were at stake when the decision not to post a warning sign was made. The Government cites only the Handbook as defining the "policy" at issue here. The Handbook, however, merely directs USPS supervisors to provide for snow and ice removal whenever snow and ice removal is necessary. Liability for the negligent implementation of this policy cannot be said to "seriously handicap efficient government operations." *Varig Airlines*, 467 U.S. at 814. Thus, the decision of whether to warn required consideration only of customer safety, without any countervailing policy interests. *Cf. Brown v. United States*, 661 F. Supp. 2d 341, 363 (E.D.N.Y. 2009) ("The decision of whether and where to post warning signs at the beach involves a weighing of safety concerns with considerations of aesthetics and the need to preserve park resources as well as concerns for cost and staffing issues.") Accordingly, the Government's failure to warn was not grounded in or susceptible to a policy analysis, and the discretionary function exception does not apply. *See Smith v. United States*, 546 F.2d 872, 877 n.5 (10th Cir. 1976) (finding that discretionary function exception does not apply when decision not to post warning sign was "not related to any policy decision, but to [a perceived] lack of need for warning there.").

19

**B.      The Government's Rule 12(b)(6) Motion to Dismiss.**

Relying on the heightened pleading standard announced in *Iqbal* and *Twombly*, *supra*, the Government argues that Plaintiff's Amended Complaint contains insufficient factual allegations to state a plausible negligence claim.

The elements of common law negligence in Vermont are: (1) the defendant must owe a legal duty to protect the plaintiff from an unreasonable risk of harm; (2) the defendant must have committed a breach of this duty by failing to exercise reasonable care; (3) the defendant's conduct must be the proximate cause of the plaintiff's injury; and (4) the plaintiff must have suffered actual loss or damage. *See Langle*, 146 Vt. at 518, 510 A.2d at 1304.  A business owner breaches its duty when it fails to repair or warn of dangerous conditions on the premises. *See Farnham*, 2003 VT 23, ¶ 10.

Plaintiff alleges that, on the day in question, (1) snow and ice present in the parking lot adjacent to the Post Office building created slippery conditions; (2) no signs warning of the slippery conditions were posted in the parking lot; and (3) the slippery conditions caused Plaintiff to fall to the ground in the parking lot. *See* Doc. 9 ¶¶ 14-18. Plaintiff further alleges that USPS had contracted with LV to provide maintenance services for the premises at which Plaintiff was injured. *Id.* ¶ 12.  As required by *Iqbal* and *Twombly*, these averments are facts, and not merely "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  From these facts it is reasonable to infer that USPS owed Plaintiff a duty to maintain the parking lot and warn of dangerous conditions thereon, that USPS knew or should have known of a dangerous condition existing in the parking lot immediately adjacent to its building, that USPS failed to warn of such danger before it was remedied, and that, but for the failure to warn, Plaintiff would not have been injured. Plaintiff may not ultimately recover on his claims, if, for example, USPS acted reasonably under the circumstances, or if the ice on which Plaintiff slipped was an obvious danger, but these are fact questions that cannot be resolved on a Rule 12(b)(6) motion to dismiss. *See generally Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 393, 264 A.2d 796, 799 (1970); *Shea v. Peter Glenn Shops, Inc.*, 132 Vt. 317, 319, 318 A.2d

177, 178 (1974).  Plaintiff's Amended Complaint sets forth a plausible claim, and therefore the Government's motion to dismiss must be denied.  *See* Fed. R. Civ. P. 12(b)(6).

**IV.**     **Conclusion.**

For the foregoing reasons, the Government's Rule 12(b)(6) motion to dismiss for failure to state a claim (Doc. 63) is DENIED.  The Government's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (Doc. 63) is GRANTED in part and DENIED in part.  Plaintiff's claims against the Government alleging a failure to maintain or repair the Post Office parking lot as a result of LV's negligence are dismissed.  The Government's motion is DENIED in all other respects.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 21st day of June, 2011.

Christina Reiss, Chief Judge
United States District Court